### BANK OF ORANGEBURG v. KOHN.

TWO-FUND DOCTRINE—CONSTITUTION OF 1895—REMEDIES.—Sec. 28, art. III., of the Constitution of 1895, abrogating the two-fund doctrine as applied to homesteads, is not retroactive, does not apply to judgments obtained before adoption of the Constitution, and is not a mere incident of the remedy. MR. CHIEF JUSTICE McIVER *dissents on the latter point.*

Before WITHERSPOON, J., Orangeburg, April, 1897.

Action by Bank of Orangeburg *v.* Matilda E. Kohn, Daniel Miller & Co. and Elhart, Joyner & Co. The following is the Circuit decree:

All of the issues in the above case were referred to a special referee, and the cause came on to be heard upon the exceptions by the defendant, Mrs. Matilda E. Kohn, to the report of the special referee, dated November 13th, 1896. The plaintiff instituted this action February 6th, 1896, to foreclose two mortgages of real estate, one executed by the defendant, Matilda E. Kohn, to the Orangeburg Building and Loan Association, dated March 1st, 1892, and duly assigned to the plaintiff in July, 1895. The other mortgage executed by the said defendant to the plaintiff bank on the 18th of July, 1895. The defendant, Matilda E. Kohn, was at the date of the said mortgages, and is still, a married wo-

man, and her husband does not own any real estate. These mortgages were duly recorded, and embrace the entire real estate of the defendant, Matilda E. Kohn, including her homestead. On the 23d of September, 1895, Daniel Miller & Co. and Elhart, Joyner & Co. obtained judgments in the Court of Common Pleas for Orangeburg County against the defendant, Matilda E. Kohn, on accounts for goods sold between the 7th day of January, 1895, and the 21st of May, 1895. On the 29th day of May, 1896, Daniel Miller & Co. and Elhart, Joyner & Co., judgment creditors of Matilda E. Kohn, by leave of Court, were permitted to intervene and to be made parties defendants in this action. The only issue presented by the pleadings arises between the defendant, Matilda E. Kohn, and her codefendants, Daniel Miller & Co. and Elhart, Joyner & Co., judgment creditors, as to the application of the equitable two-fund doctrine to this case under the Constitution of 1895. The defendants, judgment creditors, contend that the plaintiff bank, as mortgagee, should be first required to exhaust the homestead of the defendant, Matilda E. Kohn, in satisfaction of its debt, before going on the balance of the land embraced in its mortgages on which said judgment creditors only have liens by virtue of their judgments. The defendant, Matilda E. Kohn, contends that the two-fund equitable doctrine was abrogated by section 28, article III., of the Constitution of this State, adopted December 4th, 1895, to take effect January 1st, 1896; and that the Court is now without authority to apply said two-fund doctrine to this case. After finding and reporting as matter of fact the amount due the plaintiff, secured by the said two mortgages, the referee concludes as matter of law that the plaintiff is entitled to a judgment of foreclosure. The referee further concludes that the equitable two-fund doctrine is applicable to this case, and that the plaintiff should first be required to exhaust the homestead of Matilda E. Kohn, in satisfaction of plaintiff's debt and the costs of this action, and that any surplus of the proceeds of sale should then be applied, *pro*

*rata*, to the judgments of the defendants, Daniel Miller & Co. and Elhart, Joyner & Co., against Matilda E. Kohn. The exceptions of the defendant, Matilda E. Kohn, in various forms, allege that the special referee erred in concluding as matter of law that the equitable two-fund doctrine is applicable to this case, and in not concluding as matter of law that said doctrine has been abrogated by the Constitution of 1895, and that the Court now has no authority to apply said doctrine in cases of this character. The provision of the Constitution relied upon in support of the exceptions, is to be found in the fifth proviso to section 28, article III., which reads as follows: "Provided, further, that no waiver shall defeat the right of homestead before assignment, except it be by deed of conveyance or by mortgage, and only as against the mortgage debt; and no judgment creditor, or other creditor whose lien does not bind the homestead, shall have any right or equity to require that a lien which embraces the homestead and other property, shall first exhaust the homestead." As the judgments were obtained against Mrs. Kohn prior to the adoption of the Constitution of 1895, upon contracts antedating said Constitution, to sustain the exceptions of Mrs. Kohn, the provision of the Constitution, above quoted, must be construed to have a *retroactive effect*. Would such construction violate the provision of the Constitution of this State or the Constitution of the United States, which prohibit the passage of laws "impairing the obligation of contracts?" The same rule applies in the construction of constitutional provisions as would apply to the construction of statutes. The first object should be to ascertain the *intent* of the lawmakers in adopting the provision in question, if it can be discovered in the instrument.

I have failed to find anything in the Constitution of 1895 that would indicate that the framers intended that it should have a retroactive effect, and thereby alter or affect the pre-existing relation or situation of parties. It is an inflexible rule that a statute will be construed as prospective and

operating *in futuro* only, unless the intention of the legis-
lature to give it a retroactive effect is expressed in language
too clear and explicit to admit of a reasonable doubt.   3
Am. & Eng. Enc., page 757, and note to page 680.   It is
provided that the Constitution of 1895 shall be in force and
effect from and after the 31st day of December, in the year
1895.   Could a retroactive effect be given to the proviso of
the Constitution of 1895, above quoted, as relating to this
case, as contended, without violating the constitutional pro-
vision prohibiting the passing of laws impairing the obliga-
tion of contracts?   Whatever belongs merely to the remedy
may be altered at the will of the State, provided the alter-
ation or change does not impair the validity of existing
contracts.   If the alteration or change has such effect, it is
immaterial whether it is done by acting upon the remedy
or directly upon the contract itself.   In either event, it is
prohibited by the Constitution.   It is the violation of the
legal as distinguished from a moral obligation, which is re-
ferred to in the constitutional prohibition.   The obligation
of the contract consists in its binding force on the party
who makes it.   This depends upon the laws in existence
when it is made.   These are necessarily referred to in all
contracts, and form a part of them as the measure of the
obligation to perform them by the one party and the right
acquired by the other.   The legal remedies for the enforce-
ment of a contract which belong to it at the time and place
when made are a part of its obligation, as if they were ex-
pressly referred to or incorporated in its terms.   *Edwards*
v. *Kearsey*, 96 Otto, 601; *Gunn* v. *Barry*, 15 Wall., 620;
Cooley, p. 348.   Chancellor Kent says: "The better doc-
trine is, that all effectual remedies affecting the interest and
rights of the owner, existing when the contract was made,
become an essential ingredient in it, and are parcel of the
creditor's right, and ought not to be disturbed."

   The foregoing views have been adopted by our own Court
in the case of the *State* v. *Carew*, 13 Rich., 498.   The
judgment creditors, under our decisions, acquired the right

to the application of the equitable two-fund doctrine upon the facts existing at the time that they obtained their respective judgments against Mrs. Kohn, before the adoption of the Constitution of 1895, and I do not think that the fact that they did not intervene in this action until after the adoption of said Constitution can affect such right. The right to have the equitable two-fund doctrine applied is sometimes the last resort of the judgment creditor, and is, therefore, to be regarded as a substantial right, and, under the authority cited, is a part of the contract.

I conclude as matter of law that the provision of the Constitution of 1895 cannot be held to have a retroactive effect, and that said provision does not apply to this case. It is, therefore, ordered and adjudged, that the exceptions of the defendant, Mrs. Matilda E. Kohn, to the report of the special referee in the above case, dated November 13th, 1896, be overruled, and that the finding by the referee as matter of fact and the conclusion by said referee as matter of law be confirmed and be made the judgment of this Court.

From this decree the defendant, Matilda E. Kohn, appeals.

*Messrs. Izlar Bros.*, for appellant, cite: *Judgment creditors have no right to require plaintiff to exhaust homestead:* Con. 1895, art. III., sec. 28; 22 Stat., 191. *Sec. 28, art. III., Con. 1895, is not in violation of U. S. Con.:* 74 Am. Dec., 168; 11 Am. Dec., 799; 12 Wheat., 213. *This right pertains to the remedy alone:* 16 S. C., 498; 14 Rich., 154; 4 Wheat., 122; 12 Wheat., 370. *Whatever belongs to the remedy may be altered by legislation:* 107 U. S., 766; 4 Wall., 534; 11 S. C., 309; 16 S. C., 29.

*Messrs. Glaze & Herbert*, contra, for Daniel Miller & Co., cite: *Creditor is entitled to two-fund doctrine, unless deprived by Con. 1895:* 47 S. C., 136; 18 S. C., 431; 33 S. C., 151; 41 S. C., 426; 42 S. C., 426. *Sec. 28, art. III., Con. 1895, not retroactive:* 11 S. C., 73; 30 S. C., 388; 31 S. C., 6; 7 Cranch, 399; 7 Johns., 477; 13 Rich., 277; 2

Rich. Eq., 43; 31 S. C., 6. *If retroactive, it is in violation of U. S. Con.:* 15 Wall., 610; 96 Otto, 601; 5 S. C., 125; 13 Rich., 498; 21 S. C., 378; 30 S. C., 386; 41 S. C., 109; 45 S. C., 65; 47 S. C., 448. *Homestead exemptions only apply to future contracts:* 5 S. C., 126; 21 S. C., 375; 41 S. C., 109; 47 S. C., 448; 45 S. C., 65; 15 Wall., 610.

*Messrs. Dibble & Dantzler,* contra, for Elhart, Joyner & Co., cite: *Two-fund doctrine discussed in* 18 S. C., 425; 33 S. C., 142; 41 S. C., 47; 47 S. C., 136. *Constitutional provision not retroactive:* 34 W. Va., 524; 7 John., 502; 1 Bay, 179; 13 Rich., 276; 9 S. C., 293; 11 S. C., 73; 18 S. C., 481; 30 S. C., 388. *This provision, if retroactive, would be contrary to U. S. Con.:* 15 Wall., 610; 6 How., 301; 102 U. S., 206; 1 How., 312; 75 Mich., 274; 13 Rich., 498; 11 S. C., 79; 9 S. C., 294; 30 S. C., 385. *Homestead exemptions must be construed according to laws in force at time of execution of contract:* 5 S. C., 126; 21 S. C., 375; 25 S. C., 391; 41 S. C., 109; 45 S. C., 61; 47 S. C., 448.

March 24, 1898. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts of this case are set out in the decree of his Honor, Judge Witherspoon, which will be incorporated in the report of the case. The Circuit Judge decided that what is commonly known as the two-fund doctrine was not abrogated by sec. 28, art. III., of the new Constitution, as to creditors whose judgments were recovered before the adoption of the said Constitution. Mrs. Matilda E. Kohn, the homestead claimant, appealed upon exceptions which will be set out in the report of the case.

The first question raised by the exceptions which we will consider is, whether the foregoing provision of the Constitution was intended to be retroactive. The section just mentioned contains, amongst other provisions relative to the right of homestead, the following proviso, to wit: "That no waiver shall defeat the right of homestead before assignment, except it be by deed of conveyance or by mortgage,

and only as against the mortgage debt, and no judgment creditor or other creditor whose lien does not bind the homestead shall have any right or equity to require that a lien which embraces the homestead and other property, shall first exhaust the homestead." The following recital and subdivisions are contained in sec. 11 of art. XVII.: Section 11. "That no inconvenience may arise from the change in the Constitution of this State, and in order to carry this Constitution into complete operation, it is hereby declared: *First.* That all laws in force in this State, at the time of the adoption of this Constitution, not inconsistent therewith and constitutional when enacted, shall remain in full force until altered or repealed by the General Assembly, or expire by their own limitation * * * *Second.* All writs, actions, causes of action, proceedings, prosecutions, and rights of individuals, of bodies corporate and of the State, when not inconsistent with this Constitution, shall continue as valid. *Third.* The provisions of all laws which are inconsistent with this Constitution shall cease upon its adoption, except that all laws which are inconsistent with such provisions of this Constitution as require legislation to enforce them, shall remain in force until such legislation is had. *Fifth.* All recognizances, obligations, and all other instruments entered into or executed, before the adoption of this Constitution, to the State, or to any county, township, city or town therein, and all fines, taxes, penalties, and forfeitures due or owing to this State, or to any county, township, city or town therein, and all writs, prosecutions, actions, and proceedings, except as herein otherwise provided, shall continue and remain unaffected by the adoption of this Constitution. All indictments which shall have been found, or may hereafter be found, for any crime or offense committed before the adoption of this Constitution, may be prosecuted as if no change had beed made, except as otherwise provided herein." The intention of this section was, first, to prevent, as far as possible, any inconvenience that might arise by reason of the changes in the new Constitution; second, that the provisions

of the present Constitution should not affect the laws, proceedings, rights, &c., which were not inconsistent with it at the time of its adoption; third, that laws which were inconsistent with it, but required legislation to enforce them, should not be affected by the present Constitution until such legislation was had; and, fourth, that all laws inconsistent with the present Constitution, except those that required legislation to enforce them, should cease upon the adoption of the said Constitution.

It is conceded that constitutions, like statutes, are always to be construed as acting prospectively only, unless by express language or necessary implication, it is apparent that the intention was otherwise. It is contended, however, that the two-fund doctrine in force in this State at the time the present Constitution was adopted was inconsistent with the proviso hereinbefore mentioned, and was wholly abrogated by the third subdivision just set out, even as to creditors whose judgments were recovered before the adoption of the new Constitution, or, in any event, when the act carrying into effect the said proviso was approved, to wit: 9th March, 1896 (Acts of 1896, page 190). In other words, it is contended that the said proviso was intended to have a retroactive effect. The words in the third subdivision: "The provisions of all laws which are inconsistent with this Constitution shall cease upon its adoption," are, in effect, the usual repealing words of a statute, and have no reference to the question whether it was intended to be prospective or retroactive in its operation. The desire to prevent inconvenience, by reason of the changes in the present Constitution, and the provision in the fifth subdivision, that "all writs, prosecutions, actions and proceedings, except as herein otherwise provided, shall continue and remain unaffected by the adoption of this Constitution," are significant as showing an intention not to interfere with existing rights. In fact, this spirit is manifested throughout the entire Constitution. It is also argued that the words, "no judgment creditor" or other creditor, in the said proviso, manifest an

intention to apply its provisions to all judgments, whether then in existence or thereafter recovered. The words, "or other creditor," may mean a mortgagee, but, in any event, there is nothing in the proviso showing an intention to make its provisions retroactive. As it has been shown that there was no intention to give the said proviso a retroactive effect, the exceptions raising the question, which we have just considered, are overruled.

It is also contended that the two-fund doctrine is a mere incident of the remedy, and that it does not become a right until proceedings are instituted in which it can be asserted. For this reason, it is argued that it should be denied in this case, even if the said proviso is not given retroactive force. We cannot sustain this view. It is true, the opportunity to assert the right was not afforded the judgment creditors until proceedings in foreclosure were instituted, but the right to assert the equity, whenever an opportunity was afforded them, existed before the Constitution was adopted.

These views render unnecessary a consideration of the other questions raised by the exceptions.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE MCIVER, *dissenting*. While I agree that the constitutional provision invoked by appellant cannot, under the well-settled rule, be given a retroactive operation, inasmuch as no such intention is declared, in express terms, and there is no language used in the provision from which such an intention must necessarily be implied; yet I do not think it is necessary to give such constitutional provision a retroactive operation in order to afford appellant the benefit of its protection. The two-fund doctrine, as it is called, does not grow out of any contract, but out of a mere equity, which only arises out of certain circumstances; and the right to invoke its protection does not arise until the facts occur which give birth to such equity.

It may be said, as an abstract proposition, that a person would have the right to enforce the performance of any contract which he may subsequently enter into with another, by employing the means provided by law for that purpose; but such an abstract right cannot be regarded as a *legal* right until the contract is made and there is a breach of it. So here, while it may be true that when the contracts upon which the judgment creditors recovered their judgments were made, and when the judgments were obtained, such creditors, under the law as it then stood, would have had the right to invoke the equity—*not, however, growing out of such contracts*—upon which the two-fund doctrine is based, whenever the mortgagee undertook to enforce his mortgage upon the property covered by the lien of such judgments, by requiring the mortgagee first to exhaust other property upon which his mortgage was also a lien, before resorting to that property upon which alone the judgment creditors had a lien, yet that equity could only arise when the facts which gave it birth occurred; and as those facts did not occur until after the adoption of the present Constitution—the action for foreclosure having been commenced on the 6th of February, 1896—it seems to me that the constitutional provision forbids the assertion of the equity which *then*, for the first time, arose. For these reasons, thus briefly indicated, as the time at my disposal will not permit any extended discussion, I am unable to concur in the conclusion reached by Mr. Justice Gary.