13493

PEOPLE'S BANK OF CAMPOBELLO v. O'SHIELDS ET AL.

(166 S. E., 351)

Messrs. A. H. Miller and Lyles & Daniel, for appellant,

*Messrs. Lanham & Lanham* and *H. L. Bomar,* for re-spondents,

October 19, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Annie T. O'Shields was the owner in fee of a parcel of land situate in the Town of Campobello in Spartanburg County. September 7, 1926, she and her son Owen L. O'Shields made and delivered to the People's Bank of Campobello their note in the sum of $837.33, which was secured by a mortgage on this parcel of land which Annie O'Shields executed and delivered to the bank. March 23, 1927, she executed and delivered to Arthur Cleveland her mortgage in the sum of $1,500.00, securing the payment of her note in that sum, for money borrowed of him. This mortgage covered the same land covered by the mortgage of the People's Bank. The bank waived the priority of its mortgage in favor of that given to Cleveland. May 13, 1927, Mrs. O'Shields conveyed to her son Owen L. O'Shields a part of the property mortgaged to the bank and Cleveland. The conveyance was by deed in fee simple, and covers that part of the property known as lot 4. The property was divided into lots designated 1, 2, 3, 4, 5. Owen O'Shields procured R. D. Dobson to build a dwelling house on his lot 4 at a cost of $4,232.17, and secured him by giving him a mortgage on the lot and house. He informed Dobson that Cleveland had a mortgage on the lot, and procured from Cleveland a release of the lot from the lien of his mortgage, in favor of Dobson. He did not inform Dobson

of the mortgage held by the bank; nor did any one else inform him. That mortgage was, however, of record, so that he had constructive notice of it. Unfortunately for him he did not have the record searched, and hence he had no release of the bank's mortgage. Cleveland's mortgage was the first lien on lots 1, 2, 3 and 5, and third lien on lot 4. The bank's mortgage was a first lien on lot 4, and second lien on lots 1, 2, 3 and 5. Dobson's mortgage was second lien on lot 4. July, 1929, plaintiff, People's Bank, began its action for foreclosure, making Annie T. O'Shields, Owen L. O'Shields, Arthur Cleveland, B. T. Morrow, and R. D. Dobson parties defendant. Morrow is the holder of a judgment against Owen O'Shields. All of the parties defaulted except R. D. Dobson, who answered setting up his mortgage. Although the complaint stated that the mortgage of Dobson was junior to that of the bank, no notice thereof was taken by the answer. The decree of foreclosure was by consent of all parties, and was predicated upon·the report of the master, which held that the bank had the first mortgage on the Owen L. O'Shields' lot, because it had not waived it in favor of the Dobson mortgage; that Dobson held second mortgage on this lot; that Cleveland held first mortgage on lots 1, 2, 3, and 5, and third on the Owen O'Shields lot. Ranking last is the judgment of B. T. Morrow against Owen O'Shields. The property was sold by the master and bid in as follows: Lots 1, 2 and 3 by H. L. Bomar for $2,400.00; lots 4 and 5 by R. D. Dobson for $1,-100.00 for lot 4 and $225.00 for lot 5. When Dobson came to settle for his bids, he seems to have learned for the first time that the bank had the first mortgage on lot 4 and that the decree of foreclosure directed that that mortgage be first paid out of the proceeds of that lot. Thereupon an order of Court was procured restraining the master from making any further distribution of the proceeds of sale until the further order of the Court. After·due notice,·Dobson's attorneys procured from Judge Sease an order reopening the case and modifying his decree of foreclosure so as to per-

mit Dobson to assert his contention "that, having only lot No. 4 as security for his debt, the other mortgages should be paid out of the proceeds of sale of the other lots, leaving the proceeds of sale of lot 4 applicable on his debt." Mrs. O'Shields resisted this motion, insisting that she was entitled to homestead out of the proceeds of all of the property before Dobson received anything. The case was referred to a special master, who reported adversely to Dobson's contention. Judge Sease heard the case upon exceptions to this report, and reaffirmed his former decree in all particulars. The matter is here upon appeal from this last decree.

There are four exceptions, but appellant's attorneys state in their brief that: "The only question involved here is, was Mrs. O'Shields entitled to homestead exemption as against the Dobson mortgage?" This does not appear to be the cardinal question in the case. We think it is this: Is Dobson entitled to have the bank's mortgage paid out of the proceeds of the lots 1, 2, 3 and 5 before the fund derived from the sale of lot 4 is called on? In other words, can he claim the benefit of the two-fund doctrine as against the right of homestead?

The argument has taken a wide range. In our judgment it may be compressed into a narrow compass.

The Constitution and the statute in pursuance thereof determine the issue.

Section 28, Art. 3, of the Constitution of 1895 makes it the duty of the Legislature to enact such laws as will exempt from attachment, levy, and sale a homestead to the head of the family to the value of $1,000.00, etc., "provided, further, That no waiver shall defeat the right of homestead before assignment except it be by deed of conveyance, or by mortgage, and only as against the mortgage debt; and no judgment creditor or other creditor whose lien does not bind the homestead shall have any right or equity to require that a lien which embraces the homestead and other property shall first exhaust the homestead."

In obedience to this edict of the Constitution, the General Assembly has passed laws granting the right of homestead and regulating the manner in which it shall be set off. Section 9089, Code 1932, contains this provision: "No waiver of the right of homestead shall defeat the right before assignment except it be by deed of conveyance or by mortgage, and only as against the mortgage debt; and no judgment creditors, or other creditor whose lien does not bind the homestead shall have any right or equity to require that a lien which embraces the homestead and other property shall first exhaust a homesttad."

The provisions of the Constitution and the statute are in exact accord.

The manifest purpose of both is to protect the right of homestead. The provisions of both look to the protection of the claimant of homestead by forbidding the waiver thereof before assignment except by deed of conveyance, or by mortgage, and only as against the mortgage debt. And no judgment creditors or other creditor shall have the right to invoke the two-fund rule as against the right of homestead. There is no ambiguity in this language. Its meaning is clear and it does not need the citation of authorities to construe it. If one mortgage his land, he may not claim homestead in it, as against the mortgage. If he convey his land by deed, he may not have homestead out of it at all. If he mortgage his land and there are judgment or other creditors, and the mortgage has a lien upon more than one piece of the property, and the judgment or other creditor has a lien on only that in which the homesteader may claim his right, the judgment or other creditor may not compel the mortgagee to exhaust the homestead before going upon the other lands. In other words, the Constitution and the statute abrogate the two-fund rule as applied in the claim of homestead. *Bank of Orangeburg v. Kohn,* 52 S. C., 120, 29 S. E., 625.

It is apparent then that Mrs. O'Shields may not claim homestead out of the proceeds of lot No. 4, which she conveyed by deed to Owen L. O'Shields.

It is equally clear that Dobson—whose mortgage debt is not against Mrs. O'Shields and is not a lien upon her homestead—may not, under the application of the two-fund doctrine, require that the bank and Cleveland exhaust the homestead before coming upon his lot No. 4.

So much may be considered to be settled law. But the generous provisions of Constitution and the statute in protection of the right of homestead were never intended to do more than protect that right. They were never intended to give the person entitled to the homestead a provision beyond that right, which worked a hardship upon a third person who had rights in the premises. It cannot be denied that Dobson was negligent in not examining the records to ascertain if there were any other liens on lot 4 than the Cleveland mortgage, which Owen L. O'Shields assured him was the only one, and the lien of which O'Shields procured to be released in Dobson's favor. It is also true that Dobson was chargeable with constructive notice of the bank's mortgage which was of record. But it is true that Owen O'Shields concealed this fact from Dobson, who might well have been lulled into a sense of security by Owen O'Shields' apparent frankness in securing the release of the lien of the Cleveland mortgage. Mrs. O'Shields was under no obligation to tell him of the bank's mortgage. Perhaps complete frankness would suggest that she should have done so in view of the fact that the mortgage of the bank, given by her, was, she says, to secure the debt of her son Owen, whose handsome house was being built by Dobson right under her nose on the lot she had deeded to Owen. It would seem that Dobson is deserving of some consideration, and that as between him and the bank, the right of homestead being amply provided for, the doctrine of the two-fund rule has some application.

The master reported, and the Circuit Judge affirmed his finding, that Cleveland held the first lien on lots 1, 2, 3 and 5, and third lien on lot 4; that the bank had the first lien on

lot 4, and second mortgage on lots 1, 2, 3 and 5, and Dobson the second mortgage on lot 4; that Morrow had a judgment against Owen O'Shields which was a fourth lien on lot 4. The Circuit decree directed that lot 4 be first sold, and the proceeds arising therefrom be distributed as follows: First to its prorated share of the costs and disbursements of the action and any taxes past due thereon; next to the payment of the bank's judgment; then to the payment of the Dobson mortgage; then to the Cleveland mortgage. From the proceeds arising from the sale of the other lots there shall be paid their proportionate share of costs and disbursements, and any balance due on the Cleveland mortgage, *and any proceeds remaining shall be paid to Annie T. O'Shields.* (Italics added.)

Clearly all parties, including the Court, expected that the Owen O'Shields lot No. 4 enhanced in value by more than $4,000.00 by the money, labor, and material of Dobson, would bring nearly, if not quite, enough to pay all the mortgage debts, leaving a snug balance for Mrs. O'Shields. Up to this point in the proceedings no mention of the claim of homestead had been made. That claim was not injected till Dobson's motion to reopen the case was made. But the expected thing did not occur. The Owen O'Shields lot brought only $1,100.00. In these circumstances the result of the method of distribution ordered by the Court gave Mrs. O'Shields more than her homestead and wrought a corresponding hardship and loss on Dobson. Bearing in mind that Mrs. O'Shields' homestead was absolutely safely provided for, the following method of distribution should have been adopted. Under it the constitutional and statutory safeguards were obeyed, the mortgages of the bank and Cleveland were satisfied in full, Mrs. O'Shields has her homestead, and Dobson is saved a modicum of his loss.

There is no reason given why the Owen O'Shields lot, No. 4, should be sold first and the funds arising from such sale be distributed, but the supposed reason is that all parties expected that lot to fetch enough to pay the bank and

Cleveland mortgages. Cleveland had the first mortgage on lots 1, 2, 3 and 5. No distribution should have been made until all the lots were sold. Then, after the payment of all the costs and disbursements, prorated, and any taxes due on the respective lots, the Cleveland mortgage, amounting then to $1,405.60, should have been deducted from the proceeds of sale of lots 1, 2, 3 and 5, amounting to $2,625.00, leaving a balance of $1,219.40. From this should be deducted the homestead, $1,000.00, leaving a balance of $219.40. Apply this to the bank's debt which amounts to $986.25, and there remains $766.45. Apply this to the proceeds of sale of lot 4, viz., $1,100.00, and there remains $333.55 applicable to Dobson's mortgage. In these calculations we have used the figures stated in the Circuit decree; to them must be added interest. We think the costs and disbursements of this proceeding, as well as those of the main case, should be prorated.

If it be argued that this method of distribution in effect gives Dobson some measure of benefit of the two-fund doctrine, the answer is that the Constitution and statutes do not prohibit this except when it exhausts the homestead and thus deprives the claimant of her right. Here claimant receives homestead in full, the bank and Cleveland are paid in full. "The two fund doctrine is a high right, highly favored by the law." This is conceded by Mrs. O'Shields' able and fair-minded counsel. It has in no wise infringed upon the rights of his client.

It appears to us that Dobson stands in the position of the "other creditor whose lien does not bind the homestead," referred to in the Constitution and the statutes.

The judgment of the Court is that the Circuit decree be modified by substituting, for the method of distribution of the proceeds of sale therein directed, the method herein-above directed. In all other respects the Circuit decree is affirmed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER concur.

Mr. Justice Carter concurs in result.

On Petition for Rehearing

*Per Curiam.*

It appears from the petition for rehearing that since the appeal was made in this case, the bank in which the funds arising from the sale of the mortgaged property had been placed by the master has failed, and there is little left for any of the litigants. It appears also by the affidavits attached to the petition that there only remained in the master's hands "less than One Thousand Dollars applicable to the homestead of Mrs. O'Shields, which fact was known to all the parties prior to this appeal." But, we add, which fact does not appear in the transcript of record upon which the appeal was heard, and which fact was unknown to the Court. The opinion of the Court was necessarily confined to the consideration, only, of such facts as appeared in the record.

The petition for rehearing is concerned principally with the question of costs. It is urged that the opinion of this Court did not modify the Circuit decree and hence the appellant should have been required to pay all costs, on Circuit and of appeal. The Circuit decree directed that the costs be prorated to the various interests and properties. The opinion of this Court simply directed that the appeal costs take the same course. There was a modification of the Circuit decree in the manner of the application of the proceeds of sale.

We see nothing which calls for a rehearing; accordingly, the petition therefor is dismissed.

Mr. Chief Justice Blease and Messrs. Justices Stabler, Carter and Bonham concur.